# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

JEFF W. KNOBLOCH,

    Plaintiff,

vs.

HOME WARRANTY, INC., JANE FREIDINGER, NATALIE SCHNEIDERMANN and DOUGLAS D. VAN'T HOF,

    Defendants.

No. C15-4239-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

_____

## TABLE OF CONTENTS

*I.*  *INTRODUCTION AND BACKGROUND* ............................................................. *2*
   *A.*  *Factual Background* ........................................................................... *2*
   *B.*  *Procedural Background* ..................................................................... *5*
*II.*  *LEGAL ANALYSIS* ..................................................................................... *6*
   *A.*  *Standards For Summary Judgment* ..................................................... *6*
   *B.*  *Tomato(to-may-toe)-tomato (to-mah-toe): minority shareholder claims for oppression and breach of fiduciary duty* ........................................................................................... *8*
      *1.*  *Breach of fiduciary claims* ........................................................ *8*
      *2.*  *Oppression claims under Iowa law* ........................................... *10*
   *C.*  *Specific claims of breach of fiduciary duty/oppression* ........................ *11*
      *1.*  *Dilution of stock ownership* ..................................................... *11*
      *2.*  *Excessive compensation* ......................................................... *13*
*III.*  *CONCLUSION* ........................................................................................ *14*

"[T]he law has long recognized the right of majority shareholders to control the affairs of a corporation, if done so lawfully and equitably, and not to the detriment of minority stockholders." *Cookies Food Prods., Inc. v. Lakes Warehouse Distrib., Inc.*, 430 N.W.2d 447, 451 (Iowa 1988) (citing 12B W. Fletcher, CYCLOPEDIA ON THE LAW OF PRIVATE CORPORATIONS[1] § 5783, at 120 (1986)). Here, a minority shareholder brings a diversity action against majority shareholders, asserting claims of breach of fiduciary duty and oppressive conduct under Iowa law. Defendants' Motion for Summary Judgment requires me to determine, *inter alia*, whether these claims are distinct or merely two sides of the same coin, requiring the same analyses.

## I. INTRODUCTION AND BACKGROUND
### A. Factual Background

I set out only those facts, disputed and undisputed, sufficient to put in context the parties' arguments concerning defendants' Motion for Summary Judgment and plaintiff's resistance to it. At least for the purposes of summary judgment, the facts recited here are undisputed. I will discuss additional factual allegations, and the extent to which they are or are not disputed or material, if necessary, in my legal analysis.

Defendant Home Warranty, Inc. ("HWI") is an Iowa corporation formed on November 18, 1999, with its principal office and place of business in Rock Rapids, Iowa. HWI provided home warranty programs throughout the Midwest.

Plaintiff Jeff W. Knobloch is a resident of Illinois. He is a former minority shareholder in HWI. Defendant Jane Freidinger is a resident of Texas. Defendant Natalie Schneidermann is an Iowa resident. Defendant Douglas D. Van't Hof is an Iowa resident. Freidinger, Schneidermann, and Van't Hof were majority shareholders in HWI at times relevant to this lawsuit. Article XI, Section 1 of HWI's Bylaws contained a share transfer

---

[1]The parties agree that Iowa law applies to plaintiff's claims.

restriction, stating: "No transfer of shares of the common stock of the corporation . . . shall be made, nor any sale or assignment thereof be valid, unless such shares or securities shall have first been offered in writing to the corporation and secondly to the shareholders of the corporation." Compl. ¶ 17; Ans. ¶ 17.

On January 1, 2000, Knobloch was issued 8,000 shares of HWI Class A voting stock. He was issued an additional 4,000 shares of Class A voting stock in 2003. While Knobloch owned HWI shares, he received dividend payments from HWI. Van't Hof and Knobloch each owned 12,000 shares, or 50 percent of HWI's 24,000 outstanding shares.

On January 1, 2008, Freidinger was issued 1,000 shares of HWI, which resulted in Knobloch owning 48 percent, 12,000, of HWI's 25,000 outstanding shares. On April 9, 2011, Freidinger and Van't Hof removed Knobloch from HWI's Board of Directors ("the Board"), then appointed Natalie Schneidermann to the Board. On December 15, 2011, Schneidermann was issued 1,000 shares of HWI Class A voting stock.

In 2012, the Board voted to implement an employee incentive program, under which employees could purchase non-voting common stock at a par value of $1. Under this program, if employees were forced out, or voluntarily separated from HWI, they were required to surrender these shares at the same share price. Knobloch was the only Class A voting stock shareholder not eligible to purchase this non-voting common stock as part of the 2012 employee incentive program.

On March 31, 2014, the Board issued 33,000 additional shares of HWI non-voting common stock. Knobloch was not issued or offered the opportunity to purchase any shares of HWI non-voting common stock. As a result of the issuance of these additional shares of HWI non-voting common stock, Knobloch's ownership interest in HWI was reduced to 18.87 percent.

On April 15, 2015, Knobloch received payment for his 12,000 shares as part of the merger of HWI and Home Warranty of the Midwest, Inc. Dissatisfied with the amount he was paid for his 12,000 shares, Knobloch triggered his right to an appraisal rights suit under

Iowa Code § 490.1330. On June 19, 2015, in accordance with its statutory duties to Knobloch under § 490.1330, HWI filed an appraisal rights suit in the Iowa District Court for Lyon County to determine the fair value of Knobloch's 12,000 shares. On March 2, 2016, this appraisal rights lawsuit was dismissed with prejudice upon HWI's motion. Knobloch is no longer the holder of any shares of HWI or Home Warranty of the Midwest, Inc.

In 2010, HWI's officer compensation was $183,400. HWI's revenues for that year were $1,503,010, while its total income was $1,063,683.[2] In 2011, HWI's officer compensation dropped to $130,846. HWI's revenues for 2011 were $1,745,880, while its total income was $1,210, 312. The next year, 2012, HWI's officer compensation rose to $331,801. HWI's revenues for that year were $2,229,114, while its total income was $1,509,400. In 2013, HWI's officer compensation rose again, to $423,417. HWI's revenues for 2013 rose again, to $2,927,434, while its total income rose to $2,078,793. HWI's officer compensation continued to rise in 2014, to $523,200. HWI's revenues for that year rose to $3.584,578, while its total income was $2,535,807. Thus, between 2010 and 2014, HWI's officer compensation increased 185 percent. During this same time, HWI's revenue and total income rose 138 percent.

In 2012, HWI hired a certified public accounting ("CPA") firm to conduct a salary survey for the positions of Chief Operating Officer/President, Vice President Sales and Marketing, and Chief Financial Officer. These positions were occupied by Freidinger, Schneidermann, and Van't Hof at HWI. The salary survey identified salary ranges based on HWI's industry and sales figures as compared to similar companies in the region. Relying on the 2012 salary survey, the salaries of Freidinger, Schneidermann, and Van't Hof were adjusted to bring their salaries in line with the regional market.

---

[2]Total income is derived by subtracting HWI's cost of goods from its revenue.

Every year between 2009 and 2014, HWI issued dividends on its stock. In 2009, the dividend was $0.02 a share. In 2010, the dividend rose to $2.04 per share. In 2011, the dividend rose again, to $9.28 per share. In 2012, HWI paid a dividend of $0.13 per share. In 2013, HWI's dividend rose to $2.84 per share. In 2014, HWI's dividend dropped slightly, to $2.71 per share.

### B. Procedural Background

On November 23, 2015, Knobloch filed a Complaint alleging two causes of action against HWI and HWI's former majority shareholders: breach of fiduciary duty (Count I), and oppressive conduct (Count II).[3] The amount alleged to be in controversy exceeds $75,000 and there is complete diversity among the parties. Therefore, this court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Additionally, venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (3).

HWI has moved for summary judgment, contending that Knobloch's claims are without factual support and fail as a matter of law. Specifically, HWI asserts that Knobloch's breach of fiduciary duty claim that HWI improperly diluted his shares in the company fails because HWI's Articles of Incorporation did not provide for preemptive rights. HWI further contends that there are no compensable damages available to Knobloch because he was paid annual dividends on his stock shares and he received fair value for his HWI stock. HWI also argues that Knobloch's oppression claim fails because he received fair value for his shares in the company. Knobloch timely resisted HWI's Motion for Summary Judgment. Knobloch argues that HWI frustrated his "reasonable expectations" of fair treatment by depriving him of his right to share proportionately in the company's gains by diluting the value of his shares in the company and by paying

---

[3] HWI and HWI's former majority shareholders Freidinger, Schneidermann, and Van't Hof, also named as defendants, will collectively be referred to as HWI in this order.

5

themselves excessive compensation. Knobloch further argues that, as a result of HWI's actions, he has suffered compensable damages. HWI, in turn, filed a timely reply.

## II. LEGAL ANALYSIS
### A. Standards For Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is material when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.,* 418 F.3d 820, 832 (8th Cir. 2005) (stating

genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel*, 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, –– U.S. ––, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) *quoting Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a

> genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsuskljhita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*). Summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006). Consequently, I turn to consider the parties' arguments for and against summary judgment.

### B.   *Tomato(to-may-toe)-tomato (to-mah-toe):  minority shareholder claims for oppression and breach of fiduciary duty*

Knobloch brings claims for both breach of fiduciary duties and minority oppression. As noted, above, I must first ascertain whether these claims are distinct or merely two sides of the same coin, requiring the same analyses.

### 1.   *Breach of fiduciary claims*

Generally, "[t]o state a claim for breach of a fiduciary duty under Iowa law, the plaintiff must plead facts showing that "(1) [the defendant] owed a fiduciary duty to [the plaintiff]; (2) [the defendant] breached the fiduciary duty . . .; (3) the breach of fiduciary duty was a proximate cause of damage to [the plaintiff]; and (4) the amount of damages, if any.'" *Harras v. American Strategies, Ltd.*, 729 F.3d 798, 802 (8th Cir. 2013) (quoting *Top of Iowa Co–op. v. Schewe*, 149 F.Supp.2d 709, 717 (N.D. Iowa 2001) *aff'd*, 324 F.3d 627 (8th Cir. 2003)). A fiduciary duty exists between two entities "when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation[ship]." *Kurth v. Van Horn*, 380 N.W.2d 693, 695 (Iowa 1986) (quoting RESTATEMENT (SECOND) OF TORTS, § 874 cmt. a (1979)). Courts have taken a broad view of the application of oppressive conduct to a closely-held corporation, where

8

oppression may more easily be found. *See Skierka v. Skierka Bros. Inc.*, 629 P.2d 214, 221 (Mont. 1981).

The Iowa Supreme Court has held that "'majority shareholders do owe a fiduciary duty to minority shareholders.'" *Harras*, 729 F.3d at 802 (quoting *Linge v. Ralston Purina Co.*, 293 N.W.2d 191, 194 (Iowa 1980)); *see also Cookies Food Prods., Inc. v. Lakes Warehouse Distrib., Inc.*, 430 N.W.2d 447, 451 (Iowa 1988) (noting that Iowa law imposes the same fiduciary responsibilities on majority shareholders that it does on corporate directors). In *Linge*, however, the court did not address how a majority shareholder might breach such duties. Instead, the court pointed out that the majority shareholder's status as a fiduciary to minority shareholders eased the minority-shareholder-plaintiff's burden of proof in a fraud action. *Id.* at 195. The court explicitly declined to address whether breach of fiduciary duty constituted a tort independent of fraud. *Id.* at 196–97. In *Cookies*, the court reaffirmed that majority shareholders owe fiduciary duties to minority shareholders. *Cookies*, 430 N.W.2d at 451–53. However, because the majority shareholder also served as a director and officer of the corporation, the court analyzed the case in terms of the traditional directorial duties of care and loyalty. *Id.*

In *Baur v. Baur Farms, Inc.*, 832 N.W.2d 663 (Iowa 2013), the Iowa Supreme Court clarified a majority shareholder's fiduciary duty to a minority shareholder:

> We adopt today a reasonableness standard for the adjudicate of minority shareholder claims of oppression in Iowa. This standard comports with principles announced in our earlier decisions protecting the interests of minority shareholders in closely held corporations. Management-controlling directors and majority shareholders of such corporations have long owed a fiduciary duty to the company and its shareholders. *Cookies Food Prods., Inc. v. Lakes Warehouse Distrib., Inc.*, 430 N.W.2d 447, 451 (Iowa 1988). This fiduciary duty encompasses a duty of care and a duty of loyalty to the corporation. *Id.* The fiduciary duty also mandates that controlling directors and majority shareholders conduct

9

themselves in a manner that is not oppressive to minority shareholders

*Baur,* 832 N.W.2d at 673-74. Thus, a breach of fiduciary claim against majority shareholders may arise from oppressive conduct toward minority shareholders. Iowa law also specifically recognizes oppression claims. *Id*. at 667.

### *2. Oppression claims under Iowa law*

Iowa's Business Corporations Act ("IBCA") provides that a district court may dissolve a corporation in several types of proceedings, including one initiated by a shareholder alleging, "[t]he directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent." IOWA CODE § 490.1430(2)(b) (2011).

In *Baur,* the Iowa Supreme Court has concluded that "oppression" is "an expansive term used to cover a multitude of situations dealing with improper conduct which is neither illegal nor fraudulent." *Baur*, 832 N.W.2d at 667 (citing *Maschmeier v. Southside Press, Ltd*., 435 N.W.2d 377, 380 (Iowa Ct. App. 1988)).[4] The court concluded that:

> the determination of whether the conduct of controlling directors and majority shareholders is oppressive under section

---

[4] In *Maschmeier,* the Iowa Court of Appeals described the following example of oppression:

> the case of the shareholder-director-officers refusing to declare dividends, but providing high compensation for themselves and otherwise enjoying to the fullest the "patronage" which corporate control entrails, leaving minority shareholders who do not hold corporate office with the choice of getting little or no return on their investments for an indefinite period of time or selling out to the majority shareholders at whatever price they will offer.

*Maschmeier*, 435 N.W.2d at 380 (citing *Baker v. Commercial Body Builders, Inc.*, 264 Or. 614, 507 P.2d 387, 392 (1973)).

> 490.1430(2)(b) and supports a minority shareholder's action for dissolution of a corporation must focus on ... whether the reasonable expectations of the minority shareholder have been frustrated under the circumstances . . . [M]ajority shareholders act oppressively when, having the corporate financial resources to do so, they fail to satisfy the reasonable expectations of a minority shareholder by paying no return on shareholder equity while declining the minority shareholder's repeated offers to sell shares for fair value.

*Id.* at 674. In determining that Iowa would adopt the "reasonable expectations" standard for a minority shareholder oppression claim, the Iowa Supreme Court looked to where other courts had granted relief: "when the effect of a majority shareholder's conduct is to deprive a minority shareholder of any return on shareholder equity." *Id.* (citing *e.g., Bonavita v. Corbo*, 300 N.J. Super. 179, 692 A.2d 119, 125 (1996)).

It follows from this line of authority that conduct constituting breach of fiduciary duty can also amount to minority shareholder oppression. Because Knobloch's allegations of breach of fiduciary duties also serve as Knobloch's exclusive bases for his oppression claims, Knobloch's claims for breach of fiduciary duties and minority oppression are indistinct for purposes of analyses. Evidence of a breach of fiduciary duty will be considered as evidence of oppressive conduct.[5] Consequently, I turn to consider Knobloch's specific allegations of breach of fiduciary duty/oppressive conduct by HWI.

### C. *Specific claims of breach of fiduciary duty/oppression*

#### 1. *Dilution of stock ownership*

Knobloch contends that HWI breached its fiduciary duties to him and engaged in oppressive conduct by diluting his stock ownership in HWI from 48 percent to 18.87

---

[5]Although my analyses of these claims is the same, the parties dispute whether the damages available for them is the same. At this juncture, it is unnecessary for me to decide that issue.

percent. HWI counters that Knobloch's claim fails because he did not have preemptive rights to acquire HWI stock.

The Iowa Court of Appeals has recognized that:

> "Preemptive rights 'guarantee existing shareholders the first opportunity to buy new or unissued shares of stock in proportion to the number of shares they already possess before such shares can be offered to third parties or the public at large.' C. Dana Waterman III and Edmund H. Carroll, Jr., The Iowa Business Corporation Act: Corporate Governance Through the Articles of Incorporation and Bylaws, 40 Drake L. Rev. 805, 832 (1991). These rights give existing stockholders a means of maintaining their relative equity position in a corporation when new shares of stock are issued. 18A Am.Jur.2d Corporations § 525.

*Kelly v. Englehart Corp.*, Nos. 1-241, 99-1907, 2001 WL 855600, at *4-5 (Iowa Ct. App. July 31, 2001).

Since 1989, under Iowa law, shareholders have not had a preemptive right to acquire unissued corporate shares unless provided for in the Articles of Incorporation. *See* IOWA CODE § 490.630(1); *see also Kelly*, Nos. 1-241, 99-1907, 2001 WL 855600, at *5.[6] The sole evidence Knobloch relies on to support his claim is the fact that the number of outstanding shares of HWI increased from 24,000 in 2003 to 63,359 in 2014. However, I agree with HWI's position that Knobloch did not have a preemptive right to acquire unissued corporate shares because no such right was provided him in the Articles of Incorporation. Knobloch does not point to any portion of HWI's Articles of Incorporation that would provide him with such a preemptive right. Therefore, he has not generated a genuine issue of material fact on his claim and this portion of HWI's Motion for Summary Judgment is granted.

---

[6] Iowa Code § 490.630(1) specifically provides that: "The shareholders of a corporation do not have a preemptive right to acquire the corporation's unissued shares except to the extent the articles of incorporation so provide."

## 2. *Excessive compensation*

Knobloch also argues that HWI breached its fiduciary duty to him by paying Freidinger, Schneidermann, and Van't Hof excessive compensation. Relying on the Iowa Supreme Court's decision in *Baur v. Baur Farms, Inc.*, 832 N.W.2d 663 (Iowa 2013), Knobloch contends that the reasonable expectations standard governs his claim of oppression and that the compensation paid to Freidinger, Schneidermann, and Van't Hof frustrated his reasonable expectation of receiving some benefit from his minority shares. Knobloch argues that, in paying excessive compensation to Freidinger, Schneidermann, and Van't Hof, HWI violated his "implicit reasonable expectations" to share proportionately in HWI's gains.

While I recognize that on a motion for summary judgment, the record must be viewed in the light most favorable to the nonmoving party and the nonmoving party must be afforded all reasonable inferences, the nonmoving party "'may not merely point to unsupported self-serving allegations, but must substantiate [her] allegations with sufficient probative evidence[.]'" *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872–73 (8th Cir. 2005)); *see also Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) ("Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."). Here, Knobloch's claims of excessive compensation, fall into the category of "[m]ere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions[.]" *Thomas*, 483 F.3d at 527. Knobloch presents no probative evidence to support his claim of excessive compensation. It is uncontested that, in 2012, HWI sought advice from a CPA firm before calibrating its executive compensation. Iowa law permits HWI to rely on the advice it received from the CPA firm. *See* IOWA CODE § 490.830(6)(b) (declaring that a company's board of directors are "entitled to rely" on "public accountants" in discharging their duties.). Knobloch has offered no evidence even suggesting that HWI's reliance on the

CPA firm's salary survey was misplaced or that the salaries of Freidinger, Schneidermann, and Van't Hof, as adjusted, were not in line with the salaries offered by comparable companies in the same regional market. Excessive compensation claims turn on expert testimony. *See, e.g. Sugarman v. Sugarman*, 797 F.2d 3, 10-11 (1st Cir. 1986) (reviewing expert testimony). Quite simply, there is no evidence in the summary judgment record suggesting that the compensation paid to Freidinger, Schneidermann, or Van't Hof, as adjusted, was objectively out of line for a company with an economic profile like HWI. Accordingly, I find that Knobloch has failed to generate genuine issue of material fact on this issue and summary judgment is appropriate on this claim too.

### *III. CONCLUSION*

Accordingly, for the reasons discussed above, defendants' Motion for Summary Judgment is granted on all claims. Judgment shall enter accordingly.

**IT IS SO ORDERED**.

**DATED** this 10th day of November, 2016.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA